ADOLFO LABORDE BESOSA, Plaintiff and Respondent, *v.* EASTERN SUGAR ASSOCIATES, (A TRUST), ET AL., Defendants and Petitioners.

No. 11833. Submitted November 1, 1956.—Decided August 11, 1959.

470

Fiddler, González, Guillemard & Negrón Rodríguez (Fiddler, González & Nido and Carlos J. Faure, on the brief), for petitioner. Vicente Géigel Polanco for respondent.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This case could be considered as an exhaustive reconsideration of all the controversies that the labor contract applicable to our sugar industry has originated in Puerto Rico. Some of the controversies presented are: (1) the definition of what constitutes an executive pursuant to our local law; (2) the application of the exemption of processing contained in the Federal Act; (3) the application of the defense of estoppel to a labor contract tacitly

accepted by the employee; (4) the nullity of a Belo-type contract; (5) the prescription of the action to recover wages under § 6 of the Portal-to-Portal Act; (6) the unconstitutionality of § 1867 of the Civil Code of Puerto Rico insofar as it refers to the prescription of the action to recover wages; (7) the limits of the regular workweek of the sugar industry; (8) the statutory bases for computing unpaid wages.

■ The first question is as much of fact as of law. The trial court reached the conclusion that petitioner worked for respondent under different types of wages which fluctuated according to the amount of working hours and that occasionally he had one or two workmen under him, when he needed them to repair the telephone lines.

We have recently decided that the nature of the work performed by the employee constitutes the main test to determine if he really exercises executive functions: *Sierra* v. *Mario Mercado e Hijos, ante,* p. 305 (Saldaña) (1959). The employee describes his job as one to "repair telephones" (Tr. 15).

A careful study of all the evidence presented before the trial court convinces us that plaintiff only performed the job of a mere caretaker of the lines of a private telephone system operated by the defendant. The conclusion of the trial court to the effect that occasionally the plaintiff had one or two manual workmen under him, in cases of major damages, is largely sustained by the evidence. This being the case, the characteristic of "habit," so necessary for the description of what constitutes an executive job, is lacking. There is also evidence that in some occasions, in spite of the alleged "contract of minimum guarantee of weekly compensation" —the contract itself being already a strong indication of a salary that could fluctuate in accordance with the hours worked—plaintiff was paid for extra hours (Tr. 26).

The trial court reached the conclusion that plaintiff was not an executive, which has been accepted as correct by this Court, and as a result, we do not have to stop to con-

sider how the cause of action would change within the different provisions referring to an executive, prior to the promulgation of Regulation No. 13 of the Minimum Wage Board in force since January 15, 1952.

■ As to whether the exemption of processing provided by § 7(c) of the Fair Labor Standards Act is applicable to this case, a comparative study of the provisions of the Fair Labor Standards Act and the provisions of our different local laws on labor contract has convinced us that our local laws are more beneficial than the federal statute. Therefore, pursuant to § 18 of the same Fair Labor Standards Act, we should apply our local laws, in this case Act No. 49 of 1935, Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico reconciled with the provisions of Act No. 289 of 1946, and Act No. 379 of 1948: *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88, 108 (Marrero) (1956). The Legislature of Puerto Rico has not deemed it advisable to establish the total exemption for the industrial phase of our sugar industry contained in the Federal Act, providing progressively for a less exhaustive daily and weekly job for the businesses exempted by the Federal Act. There are abundant climatological, social, and human reasons which justify the difference if such justification be necessary.

■ As to whether estoppel should operate in this case, plaintiff having tacitly accepted the benefits of the contract proposed by the defendant, the evidence is clear in the sense that plaintiff did not accept the Belo-type contract. But even if he had accepted it, some of the conditions proposed in the contract would be void since they are contrary to certain legal provisions of our laws. In Puerto Rico, any provision contrary to a legislative enactment has no effect between the parties, and the fact that plaintiff intervened in the execution of the contract, does not prevent him from demanding the annulment of such conditions: *Monserrate* v. *Lopés*, 80 P.R.R. 476, 486 *in fine* and 487 (1958).

■ As to the application of § 6 of the Portal-to-Portal Act, we have nothing to add to what we already decided in *Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288 (First Reconsideration), p. 309 (Snyder) (1953), confirmed in *Eastern Sugar Associates* v. *Peña*, 222 F.2d 934, 936 (Maris) (1955). In both decisions it is established that when dealing with a claim under a local law, the term of prescription is a matter of local law, and therefore, § 6 of the Portal-to-Portal Act does not apply.

We do not believe that § 1867 of our Civil Code will be considered unconstitutional when applied to a labor contract unfulfilled by the employer. The prescription of actions is a simple matter of legislative discernment conducive to economic welfare. The labor contract is so strongly supervised by the public interest that it is natural that the Legislature of Puerto Rico has decided to maintain in all its vigor the prescriptive theory of our Civil Code which provides that said prescription will begin to run from the moment in which the workman, having ceased in his job, need not fear the reprisals of his employer for any claims he might make on his labor contract.

■ As to the length of the regular workweek for the sugar industry, it varies in accordance with the period of time covered by the claim. If the complaint refers to the period between April 8, 1935, date on which Act No. 49 of 1935 went into effect, and April 29, 1943, date on which Mandatory Decree No. 3 became effective, the regular workweek has no limit during the grinding season nor during the dead season.

If the complaint refers to the period from April 29, 1943, date on which Mandatory Decree No. 3 went into effect, until April 9, 1946, date on which Act No. 289 went into effect, fixing a day of rest for every six days of work, the regular workweek has no limit during the grinding season and a limit of 40 hours during the dead season.

If the complaint refers to the period between April 9, 1946, date on which Act No. 289 fixing a day of rest for every six days of work became effective, until May 15, 1948, date on which Act No. 379 establishing the labor wages in Puerto Rico became effective, the regular workweek has a limit of 48 hours during the grinding season and 40 hours during the dead season.

If the complaint refers to the period between May 15, 1948, date on which Act No. 379 establishing the labor wages in Puerto Rico took effect, up to the present, insofar as the "grinding season" is concerned, rather than a regular work-week of 40 hours what really exists is a new divisor based on the 40 hours to compute the compensation for extra hours of work in excess of the said 40 hours, as we shall state here-inafter. As to the "dead season," the regular workweek consists of 40 hours.

That is the result obtained from reconciling the provisions of paragraphs B-2 (a) and B-2 (b) of Mandatory Decree No. 3 with Act No. 289 of 1946 which fixes a day of rest for every six working days and with § 5 of Act No. 379 of 1948 establishing the labor wages in Puerto Rico.

In *Peña* v. *Eastern Sugar Associates, supra,* a case of an employee not exempted by § 7 (c) of the Fair Labor Standards Act (p. 304, n. 10), upon reconciling the federal statute with § 5 of Act No. 379 of 1948, we reached the conclusion that the regular workweek during the grinding season for our sugar industry was of 40 hours (p. 302 of the opinion). In the case of *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88, 97 (Marrero) (1953), the case of an employee exempted by § 7 (c) of the Fair Labor Standards Act but subject to the provisions of § 5 of Act No. 379 of 1948, we reached the conclusion that 40 hours makes the regular work-week for our sugar industry during the grinding season.

The complaint in this case covers the period between February 10, 1942 and June 30, 1952.

I. The part of the claim covered by Act No. 49 of 1935 of Puerto Rico, in force since July 8, 1935, until April 29, 1943, date on which Mandatory Decree No. 3 of the Minimum Wage Board became effective, the compensation for any time worked in excess of eight hours daily, is computed by twice the regular rate for the ninth hour and by the regular rate after the ninth hour, both during the grinding season and during the dead season. To determine the regular rate, the weekly salary shall be divided by the hours actually worked during the week.

II. The part of the claim covered by Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico, that is, from April 29, 1943, date on which said decree became effective, until April 9, 1946, date on which Act No. 289 fixing a day of rest for every six days of work became effective, the compensation for extra hours varies pursuant to the provisions of paragraphs B-2(a) and B-2(b) of the decree.

If the employee works in the industrial phase during the "grinding season," he is covered by the provisions of paragraph B-2(a) of the decree as to daily hours.

In this case, the compensation for extra hours covers all hours worked daily in excess of eight, which shall be compensated at twice the regular rate. To determine the regular rate per hour, the weekly salary shall be divided by the hours worked during the week. In this case, the regular rate per hour shall not be less than the minimum rate established by the wage scale of paragraph B-1 of the decree.

If the employee works in the industrial phase during the "dead season," he is covered by the provisions of paragraph B-2(a) of the decree as to daily hours and by the provisions of paragraph B-2(b) as to weekly hours.

In the first case, the compensation for extra hours covers all hours worked daily in excess of eight, which shall be compensated at double rate. To determine the regular rate per

hour, the weekly salary shall be divided by 40 hours. In the second case, the compensation for weekly hours worked in excess of 40, shall be compensated at time and a half. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In both cases, the regular rate per hour shall not be less than the minimum rate established by the wage scale of paragraph B-1 of the decree.

The effect of Mandatory Decree No. 3 on Act No. 49 of 1935 was to create a uniform rate of compensation for any hours worked in excess of eight hours daily.

■ III. The part of the claim covered by Mandatory Decree No. 3 and Act No. 289 of 1946 fixing a day of rest for every six days of work, that is, from April 9, 1946, date on which Act No. 289 became effective, until May 15, 1948, date on which Act No. 379 establishing the labor wages in Puerto Rico became effective, the compensation for extra hours varies pursuant to the provisions of paragraphs B-2 (a) and B-2 (b) of the decree, reconciled with the provisions of Act No. 289 of 1946.

If the employee works in the industrial phase during the "grinding season," he is covered by the provisions of paragraph B-2 (a) of the decree as to daily hours and by the provisions of Act No. 289 of 1946 in regard to the day of rest provided for the workweek.

In the first case, the compensation for extra hours covers any time worked in excess of eight hours daily, receiving compensation at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 48 hours. In the second case, the compensation for extra hours covers any time worked during the day of rest, which shall be compensated at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 48 hours. In both cases, the regular rate per hour shall not be less than the minimum rate established by the wage scale of paragraph B-1 of the decree.

If the employee works in the industrial phase during the "dead season," he is covered by the provisions of paragraph B-2(a) of the decree as to daily hours and by the provisions of paragraph B-2(b) of the decree reconciled with the provisions of Act No. 289 of 1946 as to weekly hours.

In the first case, the compensation for extra hours covers any hours worked in excess of eight hours daily, receiving compensation at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In the second case, the compensation for extra hours covers any hours worked in excess of 40 during the first six days of the week, which shall be compensated at time and a half, and any time worked during the day of rest shall be paid at double rate. To determine the regular rate per hour, both for the regular week of six days and for the day of rest, the weekly salary shall be divided by 40 hours. In the three cases, the regular rate per hour shall not be less than the minimum rate established by the wage scale of paragraph B-1 of the decree.

 The effect of Act No. 289 of 1946 on Mandatory Decree No. 3, in regard to the sugar industry, was to create a workweek of six days during the "grinding season" and a compensation at double rate for the hours worked on the day of rest. Since in both provisions Act No. 289 is more beneficial than the decree, the former should prevail over the latter, as stated in paragraph C-2 of the same decree.

 IV. The part of the claim covered by Mandatory Decree No. 3 and Act No. 379 of 1948 which establishes a labor wage in Puerto Rico, that is since May 15, 1948, date on which Act No. 379 went into effect, until now, the compensation for extra hours varies pursuant to paragraphs B-2(a) and B-2(b) of the decree, which subsist by declaration of § 5 of Act No. 379, reconciled with the provisions of said Act No. 379 of 1948.

If the employee works in the industrial phase during the "grinding season," he is covered by the provisions of paragraph B-2(a) of the decree as to daily hours and by the provisions of Act No. 289 of 1946 as to the divisor of the workweek and as to the day of rest provided for the workweek.

In the first case, the compensation for extra hours covers any hours worked in excess of eight hours daily, which shall be compensated at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In the second case, the compensation for extra hours covers any hours of the week worked in excess of 40 hours during the six days of the regular workweek, which shall be compensated at the regular rate and the hours worked during the day of rest which shall be compensated at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In both cases, the regular rate per hour shall not be less than the minimum rate established by the wage scale of paragraph B-1 of the decree.

If the employee works in the industrial phase during the "dead season," he is covered by the provisions of paragraph B-2(a) of the decree as to daily hours and by the provisions of paragraph B-2(b) of the decree reconciled with the provisions of Act No. 289 of 1946 as to weekly hours.

In the first case, the compensation for extra hours covers all hours worked in excess of eight hours daily, which shall be compensated at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In the second case, the compensation for extra hours covers any hour worked during the regular workweek of six days in excess of 40, compensated at time and a half and the hours worked during the day of rest shall be compensated at double rate. To determine the regular rate per hour, the weekly salary shall be divided by 40 hours. In both cases the regular rate per hour shall not be less than the minimum

rate established by the wage scale of paragraph B-1 of the decree.

█ The effect of Act No. 379 of 1948 on Mandatory Decree No. 3 concerning the sugar industry, was to create a new rate of compensation per hour during the grinding season, maintaining the compensation at double rate for any hour worked during the day of rest.

█ In regard to the compensation between 40 hours and 48 hours during the grinding season, reconciling the *Provided Clause* of § 5 of Act No. 379, generally applicable to industries included in the Fair Labor Standards Act, not covered by any decree of the Minimum Wage Board of Puerto Rico, with our Mandatory Decree No. 3, expressly applicable to the sugar industry of Puerto Rico, and adopting the most profitable elements of both provisions, we reach the conclusion that we should use the basis of 40 hours instead of the limit of the workweek as a new rate of compensation per hour, receiving compensation at a regular rate for the hours worked during the week between 40 and 48 hours. This allows for a more flexible workweek during the most burdensome period of the sugar industry, without defeating the legislative purpose of any of the statutes involved.

The judgment entered by the trial court shall be modified pursuant to the results of this opinion and the case shall be remanded for a new computation of the compensation.